YELVERTON, Judge.
The appellant mother appeals the trial court’s judgment terminating her parental rights to two of her children, a son and a daughter. The mother appeals, alleging that the State failed to meet its burden of proof as required by statute. We affirm.
FACTS
The daughter was born March 17, 1981. The mother maintains that this child was born after she was raped by a black man, thus the daughter is biracial. The son’s natural father is unknown. He was born September 9, 1985.
On February 7, 1986, the Office of Community Services received a report from the daughter’s school that she was having trouble urinating. After an examination, a physician concluded the child had been sexually abused. The child’s allegations were against the mother’s brother so the Department did not attempt to remove the children from the mother at this time, but instead told the mother to remove the children from their current premises where the brother was present. In March 1986, the Department was notified that the daughter had contracted gonorrhea. The children were removed from their mother on April 4, 1986, as a result of the sexual abuse of the girl and the medical neglect of the boy.
THE TERMINATION OF PARENTAL RIGHTS
The State of Louisiana, through the Department of Health and Human Resources (DHHR) brought these proceedings pursuant to LSA-R.S. 13:1600 et seq. for the termination of the appellant’s parental rights, specifically alleging the grounds and conditions set forth in LSA-R.S. 13:1601(A), which provides as follows:
A. (1) The abuse or neglect of the child by the parent or parents results from a crime committed against the person of the child or a crime committed against another child of the parent or parents or when a parent is an accessory to such a crime committed against the *312 person of the child or another child of the parent or parents.
(2) The abuse or neglect of the child by the parent or parents consists of cruel and inhuman treatment which is below a reasonable standard of human decency.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
The DHHR had the burden of proving paragraph (1) above beyond a reasonable doubt, and the burden of proving paragraphs (2) and (3) by clear and convincing evidence. LSA-R.S. 13:1603(A). In addition to proving LSA-R.S. 13:1601(A)(1), (2), and (3), the DHHR had to prove that the best interests of the children dictated termination of parental rights. LSA-R.S. 13:1602(D).
We find that the DHHR has clearly met its burden of proof in each instance. .We will now discuss the evidence presented under each of the three statutory bases of the petition.

LSA-R.S. 13:1601(A)(1)

It is undisputed that the daughter contracted gonorrhea. The mother’s brother pled guilty to the offense of contributing to the delinquency of a juvenile, with the daughter as one of the victims (the other victim, a third child of the mother, is not important to this case, and is not mentioned here), and is presently serving a prison term. The state introduced the court minutes from the criminal proceeding in which the mother also pled guilty to the offense of contributing to the delinquency of a juvenile, based on the circumstances of this case. She received jail time and a suspended sentence.

LSA-R.S. 13:1601(A)(2)

The mother was notified by the local school board that her daughter was having trouble urinating. A physician, accepted as an expert in recognizing signs of child molestation and abuse, examined the child after the complaints. He testified she had indeed been abused or molested by a male and that her hymen had been broken indicating sexual penetration. The mother was asked to take her children and leave her current residence because of the presence there of her brother, the alleged abuser.
During the period in which the mother was away from her residence, her daughter was diagnosed as having contracted gonorrhea. It was established that the children had returned to their former residence, indicating that the mother had let the children go back to the environment where she knew one had been sexually abused.
The mother testified she had no knowledge of anyone abusing her children. Her testimony conflicts with that of two case agents in the investigation. They testified that the mother, when told of the possible abuse, called her children liars and stated, using vulgar language, that she could not be responsible if her daughter had intercourse with someone.
On April 4, 1986, the day when the daughter was diagnosed, the DHHR obtained custody orders for both children. Then six-and-a-half months old, the son was found by Dr. Scott to have a severe problem with breathing and wheezing; he could not breathe properly. Dr. Scott testified that the boy was in moderate to severe distress and in severe need of medical attention almost to the point of hospitalization. He stated these conditions should have been readily noticeable by anyone, especially a child’s mother who has frequent extended contacts with the child.

LSA-R.S. 13:1601(A)(3)

The mother testified she was sorry for the things that happened to her children. Upon hearing her testimony, the trial court concluded she was a pathological liar and although she felt some grief, it was not the type of grief that would cause her to change and begin to care for her children. In addition, the court found that her demeanor during the proceedings indicated she would not cooperate and receive treatment and that she would not be subjected to any control or supervision by the Office of Human Development in order to be reunited with her children. In fact, the trial court observed that she testified she would *313 work with the authorities until she felt she could not, and then she would do what she wanted to do.
The mother was given an opportunity to reform by taking her children out of the abusive environment they were in, but she did not take advantage of this opportunity. Instead, she chose to subject her children to inhumane treatment knowing there was a great probability that such treatment would continue.
Team conferences were set up with case workers, six months apart, in which the goals and expectations of the mother were explained in order for her children to be returned to her. The testimony of Mr. Deshotel, a case worker, was that the mother failed to attend the conferences. Mr. Deshotel attempted to refer her to the New Iberia Mental Health Clinic. She refused to sign a waiver in order that information could be obtained to verify her attendance for treatment at the clinic. The trial court found that there was no proof that she attended the mental health clinic and he did not believe her allegations that she did attend. Mr. Deshotel also testified that the Department had an ongoing case on the mother, since her daughter was born or shortly thereafter, because of reports of physical abuse or neglect. Thus, in actuality, the agency had been working with her for approximately six years. Dr. Henry Legard, a clinical psychologist, testified that it was more probable than not that the mother could not be rehabilitated.
In addition, the testimony adduced at trial clearly supports a finding that the termination of the mother’s parental rights is in the best interests of the children, as required under LSA-R.S. 13:1602(D), as an additional element of proof in these cases. Several witnesses testified that they had observed no bonding between the mother and the children. The son’s case worker, Sharon Courville, testified that he has done very well in the foster home he was placed in and that the foster parents who have him would like to adopt him. She also stated that the foster parents are the only parents that this child has ever known and that he considers them to be his parents. Betty Berard, the daughter’s foster care worker, testified that she has made substantial improvement physically, and especially emotionally, since she has been placed in foster care. In addition, she testified she felt the daughter has a lot of potential and that she would be able to place her in a home to be adopted. From this evidence it appears that the chance for the children to receive a stable home free from abuse and neglect could only occur through the termination of their mother’s parental rights.
We find that the above evidence supports the trial court’s finding that the state met its burden of proof of the allegations made under Subsection A of R.S. 13:1601, Paragraph 1, beyond a reasonable doubt, and that it met the proof requirement of the remaining allegations by clear and convincing evidence.
ATTORNEY’S FEES
The state complains that the trial court’s award of attorney’s fees for the mother’s attorney to be paid by the Department of Health and Human Resources is in violation of La. Code of Juvenile Procedure art. 95(E). However, the state did not appeal the trial court’s judgment, nor did it answer the appellant’s appeal. Thus, we will not consider this issue. A judgment cannot be changed in favor of an appellee who has neither appealed, nor answered his adversary’s appeal. LSA-C.C.P. art. 2133; St. Romain v. Administrator, Office of Employment, 420 So.2d 1317 (La.App. 3rd Cir.1982); Boswell v. Roy O. Martin Lumber Company, Inc., 363 So.2d 506 (La.1978).
For the foregoing reasons, we affirm the trial court’s decision terminating the parental rights of the mother to her two children, finding, as the trial court did, that the state has met its burden of proof. Costs of appeal will be paid by appellant.
AFFIRMED.